May it please the Court, Alan Ides representing Alejandro Ebron. I'd like to reserve two minutes for rebuttal. This case is a difficult case, not because the legal issues are difficult, but because of the profound consequences in this case to an individual human being. It's more than about legal doctrine. It's about a person who was raised on American soil by American parents within the American culture, has lived here virtually his whole life, and is now about to be shipped to a foreign culture that will not recognize him, and he will not recognize it. He essentially will be stripped of his cultural identity for the rest of his life. So it's a case with profound consequences. As Immigration Judge Dennis James said, it's a sad story. Is there any possibility of mediation in this case? We tried mediation. Tried that already? Yes, I guess I can't really say anything about that as I understand it. It sounds to me as though this fellow is culturally Mexican, but by birth Japanese. That's correct, Your Honor. I would say culturally American. Is he culturally American? He speaks English? He speaks English and just a smattering of Spanish. And how rehabilitated is he? He joined a 12-step program when he was in state prison, a Christian 12-step program, and he has been clean of heroin since that time. Which was when? Well, it was almost six years ago. He's been in INS custody or ICE custody now for three years. It's quite possible that Japan won't take him. Well, we did look into that, and Japan will take him as a citizen. He will basically come off the airplane and be on his own. He has... What way did you look into it? We contacted the embassy. What? We contacted the embassy, and according to the birth records, which is known as a Koseki, he was born of Japanese parents in Japan. Everyone had assumed, he had assumed until 1994 that, in fact, he was an American citizen. It wasn't until 1994 that he was informed by the then INS that he was a permanent legal resident and not a citizen. To follow up on what Judge Kleinfeld said, you know, you don't have much of a legal case. We have questions for the government as to why they want to do it. I don't know whether it would make sense to talk to the government first and see why they're bent on achieving this wonderful result. Well, Your Honor, actually the last line of my oral argument was going to be perhaps the government can tell us why they want to do this. It seems to me they... They could give them a chance, and they could tell us, and then you can respond. I'd be happy to do that. Let me just voice one little disagreement. I think we have very strong legal arguments, and I will address those when I return. Thank you. Thank you. May it please the Court, Jonathan Potter on behalf of the Attorney General. To address your question, I think it's a question of the entire panel, we don't like the result either. I just can't imagine this guy getting off the plane in Japan and not speaking a word of Japanese. I'm probably speaking out of turn, but at the moot argument, my director started scrambling around the office trying to find some way under registration. It was an old concept, and he just didn't fit there. And that is the problem we have in this case, is EBRON does not fit into any category Congress has given us. So we're stuck with this quandary that we don't have the discretion in this case that we have in a lot of cases on removal, and that's a sad fact in this case. My attention was directed to something that was issued by the former Commissioner Doris Meisner on November 17, 2000, which the subject is exercising prosecutorial discretion. And it went out to regional directors, district directors, chief patrol agents, regional and district counsel. Are you familiar with that document? Yes, I am, Your Honor. And you know on page 11, it lists the factors that ought to be considered in exercising discretion not to go to the legal limit on a case. And it seems to me a number of those factors were here, so that you did have discretion just not to push it. Well, Your Honor, let me, since I wasn't part of the mediation, I can actually comment on Homeland Security's position. The position in this case is Mr. EBRON just continues to commit crime, and that's a sad fact. He's a career criminal. He started in 1987. Actually, he started in 1975 as a juvenile and has been committing crimes since that period of time. And that's a sad fact in this case also. He doesn't seem to be able to reform himself. And because of that, we've got the choice between keeping him here, either letting him loose again, and to once again engage in his criminal activity, or keep him in ICE custody, which also is not a good result either, Your Honor. Well, do you agree that he's been clean of heroin for six years? Well, I agree he's been clean at least three years, Your Honor, because he's been in ICE. Has he been in custody? He's been in custody, yes, Your Honor. How would you know for the other three years? You wouldn't, Your Honor. I don't know if there's a way you would know. Even if he was in a program, it doesn't necessarily mean he's clean. What was the date of his last crime? I believe it was 2000, I think, Your Honor. So he hasn't committed a crime for six years? That's correct. He was in custody for three of those? Three of those. That's correct, Your Honor. I think he was actually... Let me agree that he's not a wonderful candidate for a citizen, but he's sort of our problem. Your Honor, I want to... Another thing about that, he was in ICE custody. He's been in state custody through portions of that time as well. So his not committing crimes doesn't mean that... Doesn't mean too much. Doesn't mean too much because he hasn't been freed that often to be able to show that he's a good citizen because he keeps committing crime. Well, I think it's quite understandable that we wouldn't welcome him as a citizen if he was just dropped here out of the blue. But he grew up here, and whatever he is, he got formed in our culture. We're going to drop him on Japan? Your Honor, at his hearing, which he was unrepresented, unfortunately, by his own choice at his immigration hearing. He was? He was, yes, and he chose that. He determined he didn't want to be represented. And his argument at that hearing wasn't really, I'm a citizen, it is partially, I'm a citizen or I believed I was a citizen because I was told I was by... Or I might have been or I might have applied. That was his story. But his other argument was, please grant me asylum because I'm... And culturally, I've got Hispanic tattoos. I'm covered from head to toe with tattoos. And they're not Japanese tattoos, they're Hispanic tattoos. And the immigration judge looked at that information and said, despite the fact I find this to be a sad case, I don't find that you're eligible for asylum because you're a career criminal and I don't find you eligible for torture convention protection either. So he was... Because there was no evidence that if Mr. Ebron was returned to Japan that he would be tortured. So that was the difficulty the immigration judge had and, frankly, the service has with this case. What do we do with this individual that continues to commit crime and really isn't Japanese? What do you do with this individual? And the service understands the court's concern on that. As for the legal arguments raised in this case, Mr. Ebron's equitable estoppel argument is barred by INSP Pangolin. That case held that granting of citizenship is not an equitable power that has been conferred on federal courts and thus this court is limited to the authorizing statute that Congress has put forward. Thus the equitable remedies that were absent in Pangolin are similarly absent here. Nor is Ebron a national. As this court has held, a person becomes a national only through birth or by completing the process of naturalization. Because Ebron has satisfied neither of these requirements, he cannot be a national. Accordingly, this court must deny this petition. I will also say this, that upon my return I will once again inquire at DHS if there is any way we can figure anything out to do with this person. See if there's any further relief we can give him. And I'll make that pledge to the court. Thank you very much. First I would like to address the equitable arguments that are being made of the factual arguments. I think Judge Noonan is correct that there was discretion in this case. And as I've worked on this case for over a year, I get the feeling that some anonymous person put a stamp on his file and said to court him. I have 2 problems with that argument. One is, that it's none of our business. The discretion is conferred on the executive branch, not the judicial branch. And the second is, that he's not a great candidate for the exercise of discretion in his favor because he commits so many very serious crimes. Well, there are only 2 crimes in front of this court. And he has never challenged the allegations on the other crimes. So there are 2 crimes. One a burglary and one a theft of $28. It was in 1987. And then a theft of $28.95. Absolutely you're right, Your Honor. But I just think it is not correct for the United States to say there's nothing we can do about this. The United States could do something about this if it wanted to. They are not bound to deport him. When you say crimes before this court, you're not saying those are the only crimes he's been convicted of, right? Correct. The only crimes that he was charged with. Correct. And that's just because he didn't need to rely on any others, I suppose. Well, if he had relied on those, those could have been challenged perhaps. He may not have been represented by counsel. We would have to look into those, but I don't think those play... With the opportunity that you had for mediation, you could have challenged him anyway, couldn't you? That wasn't an issue in mediation. Is there an issue about whether he committed all the other crimes? I frankly don't know. They're not an issue in the case, I can say that. There's nothing in the record about other crimes other than there is a rap sheet. I thought there was. There is a rap sheet. Yeah, there is a rap sheet. And it's unchallenged? It's unchallenged and unrelied on because it's irrelevant. And the government also said, we have the choice. So the idea that the government is forced to do what it's doing here is just not correct. It may be true that it's not the court's business to order the government to exercise discretion, but someone in the government made a choice. I get this sometimes when I was a district judge and the government would charge somebody with a crime. And I think, why did you charge him with that? But I couldn't do anything about it. Well, but I think you can do something about this. What is our authority to overturn the government's exercise of discretion? I don't think it's a question of their exercise of discretion. I think it is a question of equitable estoppel. And I believe the government is absolutely incorrect that U.S. v. Pamelian prevents this court from exercising or imposing equitable estoppel under these facts. I couldn't get the equitable estoppel because there has to be some affirmative misconduct by the government and all I could see was negligence. Well, affirmative misconduct can be negligence. Mrs. Ebron had... Affirmative misconduct for the estoppel. I think it is affirmative misconduct to refuse to allow somebody to proceed with citizenship according to the laws established by Congress in 1961 when they had every right to do so. If that's not affirmative misconduct, I'm really... And the government has not argued that that's not affirmative misconduct. What the officer did was say, you have to have your husband here, and he was wrong. He was wrong. And that shut the door. Why is that affirmative misconduct? Because the law at that time allowed the individual parent of adoptive parents, if she was a citizen, to proceed with the citizenship of her son at that time. Well, now, if you had a record that showed that the officer knew the law and maliciously falsified his statement to the woman of what the law was just because he wanted to make trouble for her, that might be affirmative misconduct. That would be very difficult to gather that kind of evidence 48 years later or 40-some years later. So all you really have is evidence that the government official made a mistake. A mistake of severe consequences, and I think that is affirmative misconduct. It's affirmative. The government did it. It's misconduct. It violated the law. Why couldn't Ebron avoid any harm from that affirmative misconduct by getting himself naturalized once he found out in 1994 that he was not a citizen? Because he had committed a crime. He couldn't be naturalized then. He committed a crime in 1987. It was too late. But I think the question is, what happened in 1961? And the Panillion case simply says that the court cannot exercise its equity jurisdiction in violation of a statutory prescription. In other words, courts do not have the authority to override a statute. We're not asking the court to do that. We're asking the court to require the executive branch to comply with the statute. This is just the opposite. The executive branch acted in a lawless fashion in 1961 and we are saying that Mr. Ebron should be put into position he should have been in in 1961. I think this case is very easily resolved. I don't think it requires a major opinion. I don't think it requires resolving the conflict over what we mean by nationality. I think this court can simply say Mr. Ebron presented evidence that he is and should be treated as a citizen. The government has not in any way rebutted that evidence and so he should be treated as such. End of case. It could be an unpublished opinion. The government could then do exactly what it says it wants to do. Do something for this man and let the case go. Thank you counsel.
judges: Canby, Noonan, Kleinfeld